MYRNA LABOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD LABOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Bow v. Commissioner
Docket Nos. 5061-79, 15869-79.
United States Tax Court
T.C. Memo 1983-417; 1983 Tax Ct. Memo LEXIS 370; 46 T.C.M. (CCH) 777; T.C.M. (RIA) 83417; July 20, 1983. Myrna LaBow, pro se in docket No. 5061-79. Ronald LaBow, pro se in docket No. 15869-79. Paulette Segal, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: The Court consolidated these cases for trial, briefing and opinion. These cases concern payments made by Ronald LaBow *371 (Ronald) to or for the benefit of Myrna LaBow (Myrna) and their children. The question is whether the payments constitute alimony and are includible in Myrna's income under section 71(a), [1] and are deductible from Ronald's income under section 215. In the deficiency notices respondent determined the following deficiencies and additions to petitioners' Federal income tax: Additions to Tax
Petitioner
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654(a)
Myrna LaBow
1975
$3,429.00
$857.00
$171.00
$125.00
1976
983.00
281.00
56.00
37.00
Ronald LaBow
1975
6,929.34
0
0
0
1976
3,244.64
0
0
0
Respondent determined in an amended answer that Myrna LaBow's deficiencies and additions to tax for 1976 should be increased to the following amounts: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654(a)
1976
$1,645.00
$411.00
$82.00
$53.00
The parties *372 make the following concessions: Ronald concedes that his correct filing status for 1975 and 1976 is "married filing separately." Ronald also concedes that the tuition payments he made for the children's education do not constitute alimony for section 71 purposes. Respondent concedes all additions to tax in Myrna's case. Respondent also concedes the increase in deficiency with respect to Myrna's 1976 tax liability which he asserted in his amended answer. We combine our findings of fact and opinion to facilitate the disposition of the contested issues. Some of the facts have been stipulated. The stipulation and attached exhibits are incorporated herein by reference. Myrna resided in New York, New York, and Ronald resided in New York, New York, when they filed their petitions in these cases. Ronald and Myrna were married on July 28, 1960. They had three children who were born on June 30, 1961, November 7, 1967, and April 9, 1970, respectively. Myrna filed a complaint in the Connecticut courts in July, 1974, seeking a dissolution of the marriage. The Fairfield County, Connecticut, Superior Court entered an order for alimony pendente lite on February 25, 1975. *373 The order required Ronald to pay Myrna $300 per week and to pay certain specified expenses. On February 23, 1976, the Connecticut Court of Common Pleas - Bureau of Support entered a temporary support order requiring Ronald to pay Myrna $750 a week for support. On August 3, 1976, the Family Court of the State of New York entered a temporary support order requiring Ronald to pay the court $2,580 a month for support of Myrna and the children. The Fairfield County, Connecticut, Superior Court entered a Judgment on August 28, 1978, dissolving Ronald and Myrna's marriage. Ronald claimed $21,330 and $11,175 as section 215 alimony deductions for 1975 and 1976, respectively. Myrna did not file returns for 1975 and 1976. Thus, she reported no section 71(a) alimony income for those years. Respondent takes inconsistent positions in these cases to protect the revenue. He disallowed Ronald's section 215 deductions and included in Myrna's income the amounts claimed by Ronald to be alimony payments. These cases present two questions: First, how much did Ronald pay to or on behalf of Myrna and the children during 1975 and 1976? Second, do these payments constitute alimony so that *374 they are included in Myrna's income and deducted from Ronald's income? We will consider these issues separately. Amounts Paid
Ronald, of course, has the burden of proving the amount of alimony he paid and Myrna has the burden of proving the amount of alimony she received. Rule 142(a). Unfortunately, the record in these consolidated cases is far from complete. We will not, however, hold that both petitioners failed to satisfy their burden of proof because it is clear that Ronald paid substantial sums to or for the benefit of Myrna and the children during the years in issue. Accordingly, we will determine as best we can, given the sparseness of the record, the amounts which passed from Ronald to Myrna during 1975 and 1976. At trial Ronald claimed that he paid the following amounts to or on behalf of Myrna and the children during the years in issue: 1975
1976
Checks to Myrna
$ 9,000.00
$ 4,735.54
Payments through the
New York court system
0
6,855.00
Cooperative maintenance expenses
8,832.00
0
Medical expenses
302.50
0
Cable television
46.00
0
New York Telephone
465.75
0
Consolidated Edison
984.20
0
Repairs
80.08
0
Connecticut Light & Power
126.13
0
Southern New England Telephone
320.09
0
Fuel
$ 363.34
0
Tractor repair
48.52
0
Tuition expenses
9,294.50
$ 1,583.50
Total
$29,863.11
$13,174.04
*375 Because Ronald's claim at trial for deductible alimony exceeded the amounts claimed by him on his 1975 and 1976 returns, the Court entered a claim for overpayment for Ronald for those two years. [2]
Ronald produced no substantiation for the claimed payments. He testified that he provided checks which substantiated his claims to Agent Sweener, the I.R.S. agent who audited his returns. Ronald claims that Agent Sweener kept the checks and that he can no longer get them. Agent Sweener's workpapers were introduced into the record. The workpapers list the above claims for 1975 as alimony. Ronald seeks to use the workpapers as substitute substantiation. Agent Sweener was not called to testify at trial. The workpapers of a revenue agent are not competent evidence of the facts stated therein absent an agreement between the taxpayer and the respondent to so use them. . There was no such agreement in this case. Ronald contends that the stipulation in this *376 case constitutes the necessary agreement with the respondent. We disagree. The only provision in the stipulation relating to Agent Sweener's workpapers states: All of the workpapers of tax examiner Sweener involving her examination of the alimony deductions of Ronald LaBow are attached hereto as Exhibit 8-H. This stipulation plainly is not an agreement to use Agent Sweener's workpapers as proof of the facts stated therein. Accordingly, the workpapers provide no probative weight for substantiating Ronald's claimed alimony payments. Further, even if we were to consider the workpapers we note that they would have little or no substantiation value. They make no reference to 1976. Further, the workpapers do not support Ronald's contention that he showed Agent Sweener the checks substantiating his payments because the papers state: "C/C are all on deposit as evidence w/ Superior Court & TP has no access to the checks." Therefore, we will not use the workpapers as proof that Ronald paid the amounts claimed. Myrna admits that she received some checks from Ronald during 1975 and that he paid some of the year's $14,400 cooperative *377 maintenance expense. Further, Myrna does not contest that Ronald paid the medical, telephone, etc., bills which he claims to have paid. But Myrna has no records showing the amounts of money received from Ronald and spent for her benefit by him in that year. Myrna testified from her records that she received checks from Ronald totaling $4,240 during 1976. Myrna also introduced into evidence a statement from the Support Collections Unit of the Manhattan Family Court which showed that Myrna received $3,775 from Ronald through the court in 1976. Myrna further claims that some of the expenses claimed as alimony by Ronald were spent for his own benefit. In particular, Myrna states that the following 1975 expenses were in fact Ronald's expenses: Expense
Amount Claimed
Repairs
$80.08
Connecticut Light & Power
126.13
Southern New England Telephone
320.09
Fuel
363.34
Tractor repair
48.52
These items were incurred with respect to property in Connecticut (the Connecticut property) which Ronald and Myrna used for vacations. The Connecticut property consists of two houses on a piece of land. Ronald and Myrna used different houses when they visited the Connecticut *378 property. Myrna argues that the identified expenses pertain to the house which Ronald occupied and that they do not relate to the house in which Myrna and the children stayed. Ronald introduced no evidence to show that these expenses were not spent for his own benefit. We conclude that Ronald did not make these expenses associated with the Connecticut property for the benefit of Myrna and the children. Review of all the facts in the record convinces us that Ronald paid the following amounts to or for the benefit of Myrna and the children during the years in issue: 1975
1976
Checks ty Myrna
$ 4,500.00
$4,240.00
Payments through the
New York court system
0
3,775.00
Cooperative maintenance
expenses
8,832.00
0
Medical expenses
302.50
0
Cable television
46.00
0
New York Telephone
465.75
0
Consolidated Edison
984.20
0
Total
$15,130.45
$8,015.00
Payments Qualifying as Alimony
The relevant parts of section 71 provide: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- (3) DECREE FOR SUPPORT.--If a wife is separated from her husband, the wife's gross icome includes periodic payments (whether or not *379 made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. (b) PAYMENTS TO SUPPORT MINOR CHILDREN.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for they support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. The relevant part of section 215 provides: SEC. 215. ALIMONY, ETC., PAYMENTS. (a) GENERAL RULE:--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.* * * The questions *380 raised by these cases are: (1) Did Ronald make the payments to Myrna under a decree requiring him to provide for her support or maintenance? (2) Did the terms of the decree fix a sum payable for support of the children? And (3) what part of the payments was made while Ronald and Myrna were "separated"? We will consider these questions in turn. [3]
*381 Payments Pursuant to a Decree
Three orders for support pendentelite are involved in these cases: the February 25, 1975, order of the Fairfield County, Connecticut, Superior Court (hereafter referred to as the 1975 Order); the February 23, 1976, order of the Connecticut Court of Common Pleas - Bureau of Support (hereafter referred to as the February, 1976 Order); and the August 3, 1976, order of the New York Family Court (hereafter referred to as the August, 1976 Order). Payments made pursuant to pendentelite support orders such as the three orders involved here satisfy the decree requirement of section 71(a)(3). , affd. . The only question for our determination concerning the requirement that payments be made pursuant to a decree is whether Ronald's payments made before February 23, 1976, were made under an effective order. [4] Myrna argues that the 1975 Order's effectiveness was stayed pending appeal. The appeal was finished on August 17, 1976. Accordingly, Myrna contends that it was the February, 1976 Order, rather than the 1975 Order, which required Ronald *382 to make payments. If Myrna is correct then Ronald's payments made before February 23, 1976, are nondeductible voluntary payments instead of deductible alimony payments because such payments were not made under a decree. , affg. . Therefore, we must decide whether the 1975 Order became effective on or about February 25, 1975. [5]
Ronald testified that he made the payments pursuant to the 1975 Order. Therefore Ronald thought that the order was effective from about the time it was issued. A Fairfield County, Connecticut, Superior Court order dated February 22, 1977 (hereafter *383 referred to as the 1977 Order), supports this position. The 1977 Order determined Ronald's arrearages on the payments due under the 1975 Order. In computing Ronald's arrearages, the court found that Ronald had made substantial (yet less than full) payments due under the 1975 Order during 1975 and 1976. Thus, the court's 1977 Order indicates that the court's previous 1975 Order was effective during the years in issue. Myrna argues that Ronald's pre-February 23, 1976, payments were not made pursuant to an effective order because the 1975 Order was stayed pending appeal. Myrna contends in her brief that the February, 1976 Order was "the only order in effect during the years 1975 and 1976 * * *." Yet the appeal of the 1975 Order was finished on August 17, 1976. Clearly the stay was lifted by that time. This inconsistency between Myrna's argument and the facts in the record makes us unwilling to accept Myrna's position without substantiation of the stay. Myrna produced no facts to show that the 1975 Order was stayed. Other facts in the record indicate that the stay on the 1975 Order, if ever there was one, may have been lifted quite soon after the order was promulgated. *384 Ronald appealed the 1977 Order which pertained to arrearages. The 1977 Order was stayed pending appeal. But the Superior Court itself lifted the stay on April 29, 1977, prior to termination of the appeal. This action indicates that the Superior Court may have also lifted the stay (if any) on the 1975 Order early in 1975. After considering all the facts we conclude that the 1975 Order became effective on, or soon after, February 25, 1975, and that Ronald's pre-February 23, 1976, payments were made pursuant to that order. Fixed Sum Payable for Child Support
Myrna contends that all payments were child support payments excludible under section 71(b). Ronald argues that the orders fixed no amount for the support of the children. We agree with Ronald. An order must earmark a specific portion of the required payments to "fix" a child support payment for section 71(b) purposes. . We will consider each order separately. The relevant clauses of the 1975 Order stated: The Defendant [Ronald] shall promptly pay all bills on Schedule A of the Plaintiff's [Myrna's] Financial Affidavit except for the burglary *385 alarm bill. The Defendant shall pay all current bills for maintenance of the apartment in New York and the house in Wilton, and shall pay all medical and dental expenses for his wife and children pending disposition of the above-entitled case. * * * The Defendant shall furnish a rental car or another car for the use of the Plaintiff herself or for the use of the children, as the case may be. The Defendant shall pay to the Plaintiff the sum of $300 per week, and she shall pay all food bills and bills for her personal needs, and she shall pay for the lunches for the children until such time as this matter is finally disposed of. The Defendant is to receive a credit of $500 which was paid on or about November 6, 1974. These clauses do not earmark an exclusive portion for child support. [6] Therefore, no amount of Ronald's payments which were made pursuant to the 1975 Order will be excluded from Myrna's income under section 71(b). The only evidence produced by the parties concerning the February, 1976 Order was a form which stated *386 as follows: COURT OF COMMON PLEAS - BUREAU OF SUPPORT FAIRFIELD COUNTY RESPONDENT NAME LA BOW, RONALD CASE NO. U-60/76 PETITIONER NAME MYRNA LA BOW CASE NO. 4448-CS CONNECTICUT PETITION [XX] FOREIGN PETITION [] ENTRIES
ENTRIES
DATE
DISPOSITION
DATE
REASON FOR
PETITION FILED
12/3/75
1. INSUFFICIENT
ADDRESS
PETITION TRANSMITTED
12/15/75
2. RESPONDENT
LEFT JURISDICTION
PETITION ACKNOWLEDGED
1/9/76 3. PETITIONER
LEFT JURISDICTION
AMOUNT OF ORDER Temp.
$750.00 wkly
4. ORDER DENIED
OR REVOKED
5. RECONCILIATION
EFFECTIVE DATE
2/25/76 6. VOLUNTARY
PAYMENTS
DATE ENTERED
2/23/76 7. DISMISSED
X
3/21/77
MODIFICATIONS
8. WITHDRAWN
RE-ACTIVATE 11/1/77
REMARKS
Dismissed by Resp. Ct.
Nothing in this form indicates that an exclusive portion for child support had been earmarked. Therefore, no amount of Ronald's payments which were made pursuant to the February, 1976 Order will be excluded from Myrna's income under section 71(b). The relevant clauses of the August, 1976 Order stated: ORDER that pending a final determination and until the entry of a *387 final order herein the above-named Respondent [Ronald] be and he hereby is ordered and directed to pay to Family Court the (monthly) sum of $2,580 for the support of Petitioner [Myrna] and children which payments to commence on August 1, 1976. This order also failed to earmark an exclusive portion for child support. Therefore, no amount of Ronald's payments which were made pursuant to the August, 1976 Order will be excluded from Myrna's income under section 71(b).
Myrna argues that the August, 1976 Order is void. Myrna insists that the August, 1976 Order merely enforced in New York the February, 1976 Connecticut court order. Myrna maintains that the February, 1976 Order clearly was solely a child support order. Thus, she reasons, the New York court exceeded its authority in promulgating a support order for herself as well as the children because the Connecticut order which the New York court was enforcing was solely a child support order. Myrna's argument is not persuasive. As discussed earlier, the Connecticut court's February, 1976 Order did not differentiate between support for Myrna and support for the children. It was not simply a child support order. Accordingly, *388 we think that the New York court properly interpreted the Connecticut court order. Therefore, we reject Myrna's argument. All three court orders for temporary support were effective. None of the orders fixed an amount as child support within for purposes of section 71(b). These facts preclude the need to determine which part of Ronald's payments were made pursuant to each order because the result is the same for all such payments: they were made pursuant to effective court orders which did not fix an amount as child support.
"Separated"
Ronald's payments to Myrna must have been made while they were "separated" to be alimony for section 71(a)(3) purposes. In this Court the word "separated" in the section 71(a)(3) context has the following meaning: "It is our view Congress intended that a husband and wife should not be treated as 'separated and living apart' when both are living under the same roof." . Contra , revg. as to this issue . We must decide, therefore, whether and when Ronald and Myrna lived under *389 the same roof during 1975 and 1976. Myrna stipulated that she lived in the following places during 1975 and 1976: Period
Residence
01/01/75 to 05/29/75
New York City Cooperative
05/30/75 to 09/15/76
Connecticut Property
09/16/76 to 12/31/76
New York City Cooperative
and Connecticut Property
Myrna testified that she put the children in school in New York City for the 1976-1977 school year. Therefore, we conclude that Myrna primarily resided in the New York cooperative (the co-op) for the September 16, 1976 to December 31, 1976, period and made only occasional trips to the Connecticut property during this period. Ronald testified that he stopped residing in the co-op before the end of 1974. Myrna testified that Ronald lived in the co-op at least until May 29, 1975, when she moved to the Connecticut property. However, Myrna's affidavit in a civil action in the New York court system supports Ronald's position because she swore therein that Ronald stopped sleeping at the co-op in Spring, 1974. Ronald apparently retained a key to the co-op and occasionally visited the co-op to check or remove some of his belongings. The staff of the co-op locked Ronald *390 out of the co-op sometime in 1975 or early 1976. Ronald obtained a court order on April 2, 1976, which allowed Ronald renewed access to the co-op. Careful consideration of the evidence convinces us that Ronald stopped residing in the co-op before the end of 1974. [7]
Ronald occasionally visited the Connecticut property during 1975 and 1976. If Ronald and Myrna were simultaneously staying at the Connecticut property, then they stayed in separate houses. Ronald admits that he moved back into the co-op on or about October 1, 1976, and that he and Myrna simultaneously lived in the co-op (though in separate rooms) during the final three months of 1976. The facts show that Ronald and Myrna did not live under the same roof during 1975. Therefore, we hold that the $15,130.45 amount paid by Ronald that year to or for the benefit of Myrna and the children constitutes alimony. It is includible in Myrna's income and deductible from Ronald's income for 1975. However, we also find that Ronald and Myrna *391 lived under the same roof from October 1, 1976, to December 31, 1976. Under the circumstances of this case we hold that three-quarters of Ronald's payments of $8,015 ($6,011.25) made to or on behalf of Myrna and the children during 1976 constitutes alimony.Such amount is includible in Myrna's income and is deductible from Ronald's income for 1976. Ronald's request for an overpayment will be denied. Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Ronald subsequently conceded that the tuition expenses were not deductible alimony payments. Accordingly, we will not consider them further in the analysis.↩
3. No party questioned whether the cooperative maintenance expense constitutes alimony. See , . Therefore, we will not consider the issue. However, we note that title to the cooperative was apparently held in Myrna's name. Accordingly, none of Ronald's cooperative maintenance expense could be viewed as supporting his ownership interest in the cooperative. Also, no party questioned whether Ronald's payments to third parties for the benefit of Myrna or the children constitute "payments * * * received by her * * * from her husband." Sec. 71(a)(3). Therefore, we will not consider this issue.However, we note that we previously held that such third party payments constitute alimony for sec. 71(a)(3) purposes.See .↩
4. The February 23, 1976, order was entered on February 23, 1976. Its effective date was February 25, 1976. Our conclusions on this issue renders this difference irrelevant. For convenience, therefore, we refer to payments made before and after February 23, 1976. ↩
5. Myrna apparently concedes that payments made on or after February 23, 1976, were made pursuant to an effective decree because she only argues that the February 23, 1976, order governed the payments. Therefore we will not review these later payments.↩
6. The clause pertaining to tuition payments has been deleted because Ronald concedes that the tuition payments do not constitute alimony.↩
7. In her briefs, Myrna referred to another document for support of her position. That document, however, is not in the record of these cases and may not be considered herein.↩